Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5608 | **DATE** | 11/6/2001 |
| **CASE TITLE** | Rolls-Royce Industrial vs. Zurn EPC Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the foregoing reasons, the petition to compel consolidated arbitration is dismissed with prejudice. (3-1,1-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 07 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | 01 NOV -6 PM 3:02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROLLS-ROYCE INDUSTRIAL POWER, INC., a Delaware corporation, ) ) ) | |
| Petitioner, ) ) ) | |
| ) | No. 01 C 5608 |
| v. ) ) | |
| ZURN EPC SERVICES, INC., ) f/k/a NATIONAL ENERGY PRODUCTION ) CORP., a Washington corporation, ) ZURN INDUSTRIES, INC., a Pennsylvania ) corporation, and COMBUSTION POWER ) COMPANY, a California limited partnership, ) ) | Judge John A. Nordberg |
| Respondents. ) | |

**DOCKETED**
**NOV 0 7 2001**

## MEMORANDUM OPINION AND ORDER

Petitioner has filed a petition under the Federal Arbitration Act asking that we consolidate two pending arbitration proceedings – one in Atlanta and one in Chicago – because they both relate to the same general construction dispute. For the reasons set forth below, the petition is denied.

## BACKGROUND

The underlying arbitral disputes both arise out of the construction of a scrap-tire energy power plant in Fulton, Illinois. A key part of the proposed project was a "fluidized bed boiler system," which is a device that would "burn" the scrap tires. The owner and developer of the project was CGE Fulton, which is not a party here or in either of the arbitration proceedings.

-1-

CGE Fulton hired respondent Zurn EPC Services, Inc. ("Zurn EPC") to design and construct the power plant.[1]

Zurn EPC entered into a purchase order contract with petitioner Rolls-Royce Industrial Power, Inc. ("Rolls-Royce") to supply the fluidized bed boiler system. We will refer to this contract as the "main contract."[2] Rolls-Royce then entered into a subcontract with respondent Combustion Power Company ("CPC") for the design and fabrication of the boiler system. We will refer to this contract as the "subcontract." Zurn EPC was not a party to the subcontract, and CPC was not a party to the main contract.

Section 25 of the main contract between Zurn EPC and Rolls-Royce contained an arbitration clause entitled "Resolution Of Disputes." This provision, along with certain other general terms and conditions, were incorporated by reference into the subcontract between Rolls-Royce and CPC.[3] Thus, both the main contract and the subcontract have the identical arbitration provision – *i.e.* Section 25.

Section 25 contains several subsections. In subsection (a), the parties agreed to first try to resolve any disputes by negotiation between senior executives. If this negotiation failed, then subsection (b) mandated that the parties would arbitrate their dispute in Chicago with the American Arbitration Association ("AAA"). Subsection (c) states that the Seller (Rolls-Royce)

---

[1]At the time, Zurn EPC was known as National Energy Production Corp.

[2]Respondent Zurn Industries, Inc. ("Zurn") executed a guarantee in favor of Rolls-Royce regarding Zurn EPC's performance of the main contract. To simplify matters, in this opinion, we will ignore this guaranty contract as well as Zurn's role in the overall transaction and subsequent litigation.

[3]The subcontract did not incorporate the "commercial" terms set forth in the first four pages of the main contract.

must participate (under certain conditions) in any disputes between the Buyer (Zurn EPC) and the Owner (CGE Fulton).[4]

In 1996, apparently because the Illinois legislature revoked the legislation that made the project possible, Zurn EPC terminated the main contract. Rolls-Royce then terminated the subcontract. The underlying arbitral disputes both involve questions relating to termination damages under the respective contracts.

On May 25, 2000, Rolls-Royce initiated arbitration against Zurn EPC by filing a demand for arbitration with the AAA. For some unexplained reason, Rolls-Royce requested that the arbitration take place in Atlanta rather than in Chicago, which was the "exclusive" arbitral location set forth in Section 25. Zurn EPC filed a response to the arbitration demand in which it agreed to arbitrate in Atlanta.

On August 25, 2000, CPC sued Rolls-Royce in California state court. After removing the action to the Northern District of California, Rolls-Royce filed a motion to stay the litigation pending arbitration. The parties then agreed by stipulation to arbitrate their disputes, and CPC filed an arbitration demand with the AAA in Chicago.[5]

Although there are two pending arbitrations, they are not proceeding on the same timetable. According to the parties, nothing of consequence has taken place in the Atlanta arbitration. No arbitrators have been selected, and no hearing date has been set. In contrast, in

---

[4] Although not entirely clear, in the subcontract, the "Seller" presumably is CPC; the "Buyer" is Rolls-Royce; and the "Owner" is CGE Fulton.

[5] The California federal district court has stayed the action pending the results of the arbitration.

the Chicago arbitration, the parties have attended preliminary hearings, engaged in discovery, and selected the arbitrators. A hearing date is set for December 12-15, 2001.

## DISCUSSION

The issue in this case is whether to order consolidation of these two separate pending arbitrations that arise out of two separate arbitration agreements but that (arguably) involve the same facts and the same contractual provisions.

Petitioner Rolls-Royce, which is the one party common to both proceedings, asks that we consolidate the two. The gist of its argument is that it would be more efficient to have one consolidated proceeding rather than two duplicative proceedings that possibly could result in inconsistent rulings. The respondents, which are each involved in only one of the two arbitration proceedings, oppose consolidation. Their main argument is that they never agreed to consolidated arbitration with third parties who were not signatories to their respective arbitration agreements and that they would be prejudiced by having to participate in one common proceeding.

The respondents also raise a number of subsidiary arguments. They both argue that this court has no legal authority under § 4 of the FAA to consolidate the two arbitrations because one of them is pending in Atlanta, which is outside this court's district. Respondent CPC argues that venue should be transferred to the Northern District of California where the case is pending between it and Rolls-Royce. CPC also argues that the question of consolidation should be decided by the AAA arbitrators. Finally, both respondents argue that Rolls-Royce waived any right to consolidation by failing to promptly request consolidation and by inexplicably asking that one of the arbitrations take place in Atlanta.

-4-

We will address the respondents' main argument first because we find it dispositive. As framed by the parties, the issue is whether there is a basis for concluding that the respondents agreed in their respective agreements to arbitrate on a consolidated basis. It is undisputed that the parties' agreements did not directly address the issue of consolidation with non-signatories other than CGE Fulton. That is, there is no explicit clause either prohibiting or authorizing the type of consolidation requested by petitioner Rolls-Royce.

If this case were brought in most other circuits, this basic fact would end the inquiry. The majority of circuit courts have held that a court may not order consolidated arbitration if the parties' agreement is silent on the question. *See, e.g., American Centennial Ins. Co. v. Nat'l Casualty Co.*, 951 F.2d 107, 108 (6th Cir. 1991) ("we align ourselves with the view taken by the Fifth, Eighth, Ninth, and Eleventh Circuits, and hold that a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation").[6] These courts have refused to order consolidation "even where the result would be the possibly inefficient maintenance of separate proceedings." *See id.*

Until recently, the Seventh Circuit seemed to adhere to this clear-cut rule. In *Champ v. Siegel Trading Co. Inc.*, 55 F.3d 269 (7th Cir. 1995), the Seventh Circuit considered whether a

---

[6]*See also, Government of the United Kingdom of Great Britain v. The Boeing Co.*, 998 F.2d 68, 69 (2d Cir. 1993); *Baesler v. Continental Grain Co.*, 900 F.2d 1193, 1195 (8th Cir. 1990) ("absent a provision in an arbitration agreement authorizing consolidation, a district court is without power to consolidate arbitration proceedings"); *Prospective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989) ("Parties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them in."); *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984).

district court had the authority to certify class arbitration when the parties' arbitration agreements were silent on the issue. In answering this question, the court looked at the cases addressing consolidation of arbitral claims because there is "no meaningful basis to distinguish between the failure to provide for consolidated and class arbitration." *Id.* at 275. The Seventh Circuit summarized this law: "[t]he Second, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits have held that absent an express provision in the parties' arbitration agreement, the duty to rigorously enforce arbitration agreements [under the FAA] bars [] consolidated arbitration, even where consolidation would promote the expeditious resolution of related claims." *Id.* at 274. Adopting the rationale of these cases, the Seventh Circuit held that "section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter." *Id.* at 275.

However, in *Connecticut Gen. life. Ins. Co. v. Sun Life Ass. Co. Of Canada*, 210 F.3d 771 (7th Cir. 2000), the Seventh Circuit pulled back somewhat from this clear-cut rule and held that it was still possible to find that the parties had consented to consolidated arbitral proceedings even though their agreement was silent on the issue. In other words, a court could find that a party impliedly consented to consolidation. Not surprisingly, petitioner relies almost exclusively on this one case.

Although *Connecticut General* requires that we engage in a more complex analysis, it ultimately does not change the result. *Connecticut General* involved a reinsurance contract entered into by a number of insurance companies that fell into two groups described as "insurers" and "reinsurers." A dispute arose over the formation and administration of the contract, and a number of the insurers initiated separate arbitration proceedings. The reinsurers filed a petition

in the Northern District of Illinois asking that the individual arbitration proceedings be consolidated into one unified proceeding. The district court denied the petition. The Seventh Circuit reversed and remanded, holding that "the balance of both the textual and practical arguments" favored consolidation. *Id.* at 776

In the first part of its opinion, the Seventh Circuit laid out the legal framework. Unlike consolidation of legal cases, which may be ordered without the parties' consent on grounds of judicial efficiency, arbitral consolidation may not be ordered "in defiance of the parties' wishes or contractual undertakings." *Id.* at 774. Although the Seventh Circuit recognized that a party must have consented to consolidated proceedings, it concluded that such consent need not be explicit and may arise from inferences taken from the parties agreement. The Seventh Circuit suggested that other circuit courts had been overly strict in analyzing the consolidation question:

> we cannot see any reason why, in interpreting the arbitration clause for purposes of deciding whether to order consolidation, the court should (as the language quoted from the *American Centennial* case might, if read literally, be thought to suggest) place its thumb on the scale, insisting that it be "clear," rather than more likely than not, that the parties intended consolidation. It is not as if consolidation of arbitration proceedings were somehow disfavored; quite the contrary – the same considerations of adjudicative economy that argue in favor of consolidating closely related court cases argue for consolidating closely related arbitrations. To repeat, the court has no power to order such consolidation if the parties' contract does not authorize it. But in deciding whether the contract does authorize it the court may resort to the usual methods of contract interpretation, just as courts do in interpreting other provisions in an arbitration clause.

*Id.*

To summarize, the relevant inquiry under *Connecticut General* is whether, relying on the usual methods of contract interpretation, we can say that it is more likely than not that all the parties involved intended for their disputes to be consolidated. *Id.* In applying this standard to

-7-

the facts in the case before it, the Seventh Circuit analyzed the structure of the parties' contract and the way certain words such as "party" and "dispute" were used and concluded that the textual inferences indicated that the parties intended "to have a single arbitration proceeding when there is a single dispute." *Id.* at 775. Although there were multiple parties to the contract, the contract essentially treated them as two groups or parties, thus suggesting that they would have wanted to resolve their disputes in one proceeding.[7] Because the contract mandated that "any dispute" under the contract would be sent to a panel of three arbitrators and because all of the separate arbitration proceedings involved the same "identical" dispute, the Seventh Circuit concluded that the parties intended to consolidate those disputes. *Id.* at 775-76.

After analyzing the textual inferences, which were probative but not conclusive, the court then considered the "practical" aspects of consolidation. It is important to understand the precise basis for even considering these practical considerations. As the Seventh Circuit made clear in the first part of its opinion, a court may not order arbitral consolidation simply on grounds that the *court* believes it would be more efficient to do so. However, a court may consider these aspects indirectly based on the rationale that it is reasonable to assume that the *parties* would have wanted to arbitrate their dispute in a "sensible" or practical way. *Id.* at 775 ("practical considerations [] are relevant to disambiguating a contract, because parties to a contract generally aim at obtaining sensible results in a sensible way"). The Seventh Circuit then concluded that these practical considerations also favored consolidation in this particular case:

---

[7]Other evidence supported this interpretation. For example, all of the insurers used the same agent (Unicover) to negotiate the contract on their collective behalf. *Id.* at 772.

> To have the identical dispute litigated before different arbitration panels is a formula for duplication of effort and a fertile source, in this case, of disputes over esoteric issues in the law of res judicata (the kind of dispute that would also arise if the question of consolidation were for the arbitrators rather than the district court to answer).

*Id.* at 776.

Petitioner believes that facts in the present case are essentially the same as those in *Connecticut General* and thus argues that the result should be the same. We disagree. There is a primary structural difference between the two cases, which is the fact that *Connecticut General* involved a single agreement whereas this case and the other circuit court cases cited above involved multiple agreements.[8] Petitioner has cited to no case – and we have found none – holding that the parties impliedly consented to consolidated arbitration where there were two separate arbitration agreements with different parties signing each agreement.

This general point was made by the Second Circuit in *Government of the United Kingdom of Great Britain v. The Boeing Co.*, 998 F.2d 68 (2nd Cir. 1993), which, unlike *Connecticut General*, involved the same type of tripartite arrangement as here. The United Kingdom sought to compel consolidation of two pending arbitrations to which it was a party – one with Boeing and one with Textron. Boeing and Textron each entered into separate arbitration agreements with the United Kingdom; however, as here, each agreement had the same arbitration clause. *Id.* at 69. The Second Circuit held that "a district court cannot order consolidation of arbitration proceedings arising from *separate* agreements to arbitrate absent the parties' agreement to allow

---

[8]*See Government of the United Kingdom.*, 998 F.2d at 69 (three parties and two agreements); *American Centennial*, 951 F.2d at 107 ("numerous re-insurance agreements"); *Baesler*, 900 F.2d at 1194 (Continental entered into separate agreements "with several producers"); *Prospective Life Ins.*, 873 F.2d at 282 (three parties and two agreements); *Weyerhaeuser*, 743 F.2d at 637 (three-party relationship with a main contract and subcontract).

such consolidation." *Id.* (emphasis added). The Second Circuit distinguished one of its earlier cases (*Nereus*), in which it had ordered consolidation of two arbitrations involving three parties:

> [in *Nereus*,] all three parties were in arbitration pursuant to a single arbitration agreement. We determined that the intention of the signatories to [that agreement] would be most closely adhered to with a single arbitration proceeding. In contrast, in the case before us, Boeing and Textron are in arbitration with the United Kingdom pursuant to two distinct agreements to arbitrate contained in two distinct contracts. Neither agreement contains any provision for consolidation. Boeing never agreed to participate in arbitration with Textron, and vice versa. We simply have no grounds to conclude that the parties consented to consolidated arbitration. The district court is without authority to consolidate the two actions based on the mere fact that the disputes contain similar or identical issues of fact and law.

*Id.* at 70; *see also*, *Weyerhaeuser*, 743 F.2d at 637 ("It is clear that the parties here did not consent to joint arbitration. [T]here are two separate agreements between the headcharter and subcharter parties. Each agreement contains its own arbitration clause and each clause requires only arbitration between the parties to the agreement.").

It is easier to rely on textual inferences arising out of words such as "dispute" and "party" when all of the possible arbitration participants signed the same agreement and when they are all seeking to arbitrate the identical dispute. It is also easier to assume that the parties would have all agreed that it was more practical to arbitrate their identical disputes in one proceeding.

In contrast, when there are multiple agreements with different parties to each agreement, these arguments are less convincing. It is more difficult to rely on textual inferences from two separate agreements even if they do happen to incorporate some (but not all) of the same terms. The word "dispute," for example, becomes more ambiguous when it spans two agreements.

Also, the fact that there are two agreements with different parties makes it less likely that the disputes will be identical as they were in *Connecticut General*. This issue is a potential

-10-

problem here. Rolls-Royce claims that the two arbitrations relate to the same basic dispute and involve the same contractual provisions because the subcontract incorporated by reference some of the terms from the main contract. However, CPC disputes the assertion, arguing that the arbitral disputes each contain unique issues not common to both. *See* CPC Resp. Brief at 12-13. At this point, the record is not developed sufficiently for us to make an accurate assessment of whether two disputes are the same. At a minimum, unlike *Connecticut General*, there is no agreement that the disputes in this case are identical.

The "efficiency" argument is also problematic. At the time the two agreements were entered into, Rolls-Royce likely would have thought it more sensible to arbitrate on a consolidated basis given that it was a party to both agreements and would have to arbitrate in two separate, but related proceedings. But is it fair to assume that the respondents would have also agreed? We think not. The respondents did not sign both agreements, and they reasonably may have concluded that they would be better off arbitrating with just Rolls-Royce, thereby avoiding the additional complexity and delay that likely would arise by allowing additional parties to participate in the proceeding.

In this case, there is no textual evidence to suggest that Zurn EPC would have wanted to participate in consolidated proceedings with third parties who were non-signatories to the agreement. Section 25 uses language suggesting that only two parties would be involved in the dispute resolution process. *See, e.g.,* § 25(a) ("*Any party* may give the *other party* written notice of any dispute not resolved in the normal course of business. Executives of *both* parties . . . shall meet . . . .") (emphasis added). Moreover, subsections (b) and (c) explicitly address the circumstances in which the Seller (Rolls-Royce) may be a "participating party" in disputes

-11-

between Zurn EPC and CGE Fulton. The fact that Section 25 specifically allows for joinder of certain disputes involving the Owner (CGE Fulton), but says nothing about joinder of disputes involving the Subcontractor (CPC), further cuts against petitioner's argument that the parties intended to consolidate the two pending arbitrations.[9]

In conclusion, we find that there is insufficient textual or other evidence to conclude that the respondents intended to consolidate arbitral disputes arising out of two separate agreements.

## CONCLUSION

For the foregoing reasons, the petition to compel consolidated arbitration is dismissed with prejudice.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: November 6, 2001

---

[9] With regard to the subcontract, the meaning of subsections (b) and (c) is less clear. However, we need not untangle its meaning because, even if we could somehow conclude that CPC agreed to consolidated arbitration in the subcontract, it is clear that Zurn EPC never agreed in the main contract to consolidated arbitration. To compel consolidation, we would have to find that *all* parties consented.

-12-